VIOLA M. ROMEO et al., Respondents-Appellants, v. JOHN HARANEK, Appellant-Respondent.—

Gibson, Reynolds and Taylor, JJ., concur; Gibson, J., concurs in a separate memorandum: I am in entire accord with the memorandum for affirmance of the order denying plaintiff's motion to set aside the verdict as against the weight of the evidence and for reversal of the order granting a new trial because of newly discovered evidence; and merely note my additional comments which may afford it some further support. Our decision in *Cyr* v. *McGrath* (8 A D 2d 898) seems to me to mandate affirmance of the order denying the motion to set aside the verdict. Although in *Cyr* the plaintiff "stopped very suddenly" while here the plaintiff said that she "gradually came to a stop", her testimony, under the circumstances of this case, seems to me to warrant even more strongly a finding of her contributory negligence; for if she had time to stop "gradually" after having the benefit of the warning signals from the cars ahead, then she had ample opportunity (1) to observe defendant's car to her rear (see *Cvik* v. *Twining*, 13 A D 2d 853), which concededly she did not; and (2) to give to defendant the same kind of signal that had advantaged her, and the finding, perhaps implicit in the verdict, that she did not signal was warranted by her quite evident failure to sustain the burden of proof in this respect. The case of *Severance* v. *Meade* (12 A D 2d 870) seems to me completely distinguishable, exactly as it was distinguished in *Cvik* (13 A D 2d 853, *supra*). Bergan, P. J., dissents in a memorandum in which Herlihy, J., concurs: There should be a new trial, not for newly discovered evidence, but because the verdict for the defendant is quite strongly against the weight of evidence. It is not disputed that plaintiff Viola M. Romeo stopped her car because the line of traffic in which she was moving, with defendant behind her, stopped. There is no competent evidence whatever of any observation by anyone that she had stopped suddenly. Plaintiff herself testified she stopped gradually because the line of traffic ahead was stopping; and neither defendant nor either of his two passengers testified how she stopped. Defendant Haranek on direct examination by his own lawyer was asked these questions: "Do you know whether, at the time you hit the car, it was stopped or moving? A. I think it came to a sudden stop. [Motion to strike "what he thinks"]. Q. Do you know whether the car was stopped or moving, if you know? A. It wasn't moving; it must have been stopped. Q. How long had it been stopped, do you have any idea? A. I didn't have any idea. Everything happened so fast. I couldn't describe the time, how long it was." Defendant testified at the time of collision he was moving at 15 miles an hour and he had been moving at 25 miles per hour "about three car lengths in back of Mrs. Romeo". To the question that "you didn't bring your car to a stop before you hit her?", he answered "That's right." He testified he heard screeching of brakes before the collision, but there is no proof whether this emanated from plaintiff's car or from a car ahead of her. Plaintiff's car was in plain sight; defendant's report to the Motor Vehicle Bureau stated a car in the line of traffic ahead of plaintiff's car made a left turn; and it is clear that the whole line of traffic ahead of plaintiff and defendant stopped. Defendant should have been able to stop when plaintiff stopped; and his failure to see stop lights on the plaintiff's car is certainly not conclusive that the lights did not go on when the record is seen in full context. It is very clear that the

negligent failure of defendant to observe traffic conditions in plain sight ahead of him caused him to run into plaintiff's car, which defendant himself testified was stopped when he hit it.